# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **D.H. GRIFFIN WRECKING COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1051** |
| **1031 CANAL DEVELOPMENT, LLC** | **SECTION "L" (3)** |

## ORDER & REASONS

Pending before the Court is Counter-Defendant D.H. Griffin Wrecking Company, Inc.'s Motion to Dismiss various counterclaims. R. Doc. 44. Counter-Claimant 1031 Canal Development, LLC, opposes the motion. R. Doc. 45. D. H. Griffin Wrecking Company, Inc., has filed a reply. R. Doc. 51. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.    BACKGROUND

This declaratory judgment action arises out of the partial collapse of the Hard Rock Hotel under construction at 1031 Canal Street, New Orleans, Louisiana, on October 12, 2019. R. Doc. 1 ¶ 7. Plaintiff D.H. Griffin ("Griffin") is a demolition contractor engaged by Defendant 1031 Canal Development, LLC, ("1031 Canal"), the company overseeing the development of the Hard Rock Hotel, and the State of Louisiana. Plaintiff Griffin was engaged to demolish two tower cranes that were damaged during the structural collapse of the hotel. The cranes were demolished on October 20, 2019. R. Doc. 1 ¶ 12.

Following the demolition of the cranes, Griffin and 1031 Canal began discussing the demolition of the building itself. R. Doc. 1 ¶ 13. The parties ultimately memorialized the terms and conditions of their agreement in a signed document entitled "Binding Memorandum of

Understanding of Demolition (Project)" ("MOU"). R. Doc. 1 ¶ 15. In relevant part, the MOU provided that Griffin would secure $50 million in insurance coverage and that the parties would formalize the agreement through a "good faith negotiation within seven (7) days." R. Doc. 1 ¶ 19. Despite continued negotiations, the parties were unable to reach a formal agreement within seven days, allegedly for two reasons. First, because the State refused to indemnify Griffin, an issue Griffin characterizes as "a foundational premise of D.H. Griffin engaging to do the demolition work, as contemplated by the Memorandum of Understanding," and second because Griffin was only able to secure a commitment for $22 million in insurance coverage. R. Doc. 1 ¶ 21. 1031 Canal allegedly refused to formalize the agreement without $50 million in insurance as specified in the MOU. R. Doc. 1 ¶ 23. On March 28, 2020, 1031 Canal sent Griffin a Cease and Desist Letter claiming that Plaintiff has breached its obligations under the MOU. R. Doc. 1 ¶ 24.

Based on the foregoing, Griffin filed the instant declaratory judgment action seeking a "determination of the validity and the enforceability of the Memorandum of Understanding under Louisiana law and 1031 Canal's entitlement to claim damages for breach of contract." R. Doc. 1 ¶ 30. Essentially, Griffin argues the MOU is not a binding contract capable of being breached. Rather, in Griffin's view, it is merely a "term sheet of 'hoped for' contract terms." R. Doc. 1 ¶ 25.

Defendant 1031 Canal answered the complaint, providing a notably different interpretation of the facts. Specifically, 1031 Canal alleges that Griffin engaged in nefarious price gouging with respect to the tower crane demolition contract, but that 1031 Canal had no choice but to acquiesce due to intense political pressure from the State of Louisiana, City of New Orleans, and the public.[1]

---

[1] Defendant argues the demolition of the cranes was not satisfactorily performed, as "[o]ne crane remain speared into Rampart Street, and the other hangs over Canal Street." R. Doc. 5 at 13. Defendant also alleges that after the demolition was complete, it learned that the demolition was actually unnecessary, as the cranes could have been removed as part of a larger implosion or comprehensive demolition plan. R. Doc. 5 at 13. Defendant charges Plaintiff with "us[ing] its superior knowledge to take advantage of 1031 Canal and the City's relative lack of sophistication with respect to demolitions—which in turn allowed Griffin to gain a foothold in discussions for the larger contract to demolish the Building." R. Doc. 5 at 13.

R. Doc. 5 at 13. 1031 Canal laments the obstacles preventing the timely demolition of the building and charges Plaintiff with having a "central role in orchestrating these delays." R. Doc. 5 at 2. 1031. The MOU, according to 1031 Canal, was negotiated with Griffin at the request of City officials. R. Doc. 5 at 14–15. 1031 Canal also specifically argues that the MOU was contemplated as a binding contract, despite the fact that the "exact scope of 'services' would be formalized in a good-faith negotiation." R. Doc. 5 at 15. 1031 Canal contends, "The binding nature of the 'Binding' Memorandum was expressly understood by everyone, including Griffin, to be a material inducement of 1031 Canal's consent, particularly because of Griffin's past actions and misrepresentations with respect to the crane implosion." R. Doc. 5 at 15. Despite 1031 Canal's refusal to commit to the under-insured project, it alleges that "Griffin continues to lobby government officials to require 1031 Canal to agree to an under-insured demolition contract to Griffin." R. Doc. 5 at 17.

Based on these allegations, 1031 Canal additionally raises eight counterclaims against Griffin. These claims, discussed in greater detail below, involve violations of the Louisiana Unfair Trade Practice Act ("LUTPA"), tortious interference with business relations, fraud, breach of contract, detrimental reliance, and duress.

## II.   PENDING MOTION

Griffin seeks the dismissal of each of 1031 Canal's counter-claims on the grounds that 1031 Canal has failed to state a claim with respect to each count and that such deficiencies cannot be cured by amendment because the facts necessary to support such claims are implausible in light of the evidence provided by Griffin. R. Doc. 44. In support of its motion, Griffin suggests the Court consider a number of documents outside the pleadings, including: (1) the Binding Memorandum of Understanding (Project) dated January 14, 2019; (2) the Emergency Public

Works Agreement dated October 18, 2019; (3) an email from Steven Dwyer dated March 6, 2020; and (4) 1031 Canal's Motion for Approval of Site Demolition, Entry of Evidence Preservation Protocol, and for Expedited Hearing in the proceeding *Membreno v. 1031 Canal Investments, L.L.C. et al*, No. 2019-10819, Civil District Court for the Parish of Orleans. R. Doc. 44 at 4.

1031 Canal opposes the motion. R. Doc. 45. 1031 Canal specifically objects to the consideration of several of these documents. R. Doc. 45 at 2. Additionally, 1031 Canal argues it has pleaded sufficient facts to state a claim with respect to each counterclaim, but that in the event any pleadings are deficient, it should be granted leave to amend. R. Doc. 45 at 22. Griffin has filed a reply, largely re-urging the arguments made in the motion. R. Doc. 51.

## III.   LAW & ANALYSIS

### A.   Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court

4

must construe facts in the light most favorable to the nonmoving party, *id.*, and it "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## B. Discussion

### 1. Relevant Documents

Typically, a court considering a motion to dismiss is confined to the four corners of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). However, a court may also consider documentary evidence attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). As the Fifth Circuit has explained, consideration of such documents is appropriate because "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.*

Griffin urges the Court to consider four documents when evaluating the instant motion. 1031 Canal specifically objects to the consideration of two of those documents: the Emergency Public Works Agreement dated October 18, 2019, and an email from Steven Dwyer dated March 6, 2020. The Court will discuss each contested document in turn.

### a. Emergency Public Works Agreement

Griffin contends consideration of the Emergency Public Works Agreement is appropriate because its existence is admitted in 1031 Canal's answer and is central to 1031's counterclaims

for LUTPA violations, duress, and breach of the crane implosion contract. R. Doc. 44 at 4. In opposition, 1031 Canal argues it never mentioned the specific Agreement and only admitted in its answer that the Agreement was executed by the State of Louisiana. Further, 1031 Canal contends the Agreement has no bearing on the counterclaims and is "only being advanced by Griffin in support of its defenses." R. Doc. 45 at 2.

Lower courts considering the centrality of a document to a particular claim have concluded that such a document may be considered only if it is "necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). A document may not be considered, however, if it is "merely evidence of an element of the plaintiff's claim." *Id*. Moreover, "[D]ocuments used to support a defendant's affirmative defense appear not to fall within the exception." *In re Xtreme Power Inc.*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016).

At first blush, it appears as though the Agreement is cited primarily to support Griffin's defenses and, accordingly, would not qualify for consideration in this stage of the litigation. However, the Agreement appears central to 1031 Canal's counterclaim for breach of the crane implosion contract. Although 1031 Canal was purportedly not a signatory to the Agreement, its counter claim is based on alleged violations of the obligations and expectations contained therein. Accordingly, the Court finds consideration of the Emergency Public Works Agreement appropriate in the resolution of this motion to dismiss.

b.  Email from Steve Dwyer

Griffin claims that consideration of an email from Steve Dwyer dated March 6, 2020 is appropriate because 1031 Canal's counterclaim includes allegations about a "new contract" and attaches Exhibit 1 as support. Griffin explains that Exhibit 1 contains certain attachments included

in the March 6, 2020 email chain, and accordingly argues the email itself is admissible under Rule 106's "rule of completeness" because it is "integral to evaluating the plausibility of the 'new contract' claim and the claim that the MOU is a binding agreement." R. Doc. 44 at 4.

1031 Canal objects to consideration of the email under the rule of completeness because the rule is designed only to supplement evidence that, presented alone, would be misleading. R. Doc. 45 at 2. As 1031 Canal explains, "[t]he rule of completeness is not a mechanism by which a party (like Griffin) can seek to introduce evidence in an attempt to defeat a claim on the merits at an early stage." R. Doc. 45 at 2.

Federal Rule of Evidence 106, known as the "rule of completeness," provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "The rule's purpose is 'to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading.'" *United States v. Garcia*, 530 F.3d 348, 351 (5th Cir. 2008) (quoting *United States v. Branch*, 91 F.3d 699, 727 (5th Cir. 1996)). "In addition to ensuring that a court has an accurate representation of a declarant's statement, the rule guards against 'the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material.'" *United States v. Burns*, 162 F.3d 840, 853 (5th Cir. 1998) (quoting *Beech Aircraft Corp.*, 488 U.S. 153, 172 n. 14 (1988)).

The Court agrees with 1031 Canal in finding that Griffin has not adequately demonstrated how failing to consider the email from Steve Dwyer would be misleading. Further, the email appears relevant only to the factual development of Griffin's defense. Griffin's attempt to include

this document is a means of attacking the merits of 1031 Canal's counterclaims and is accordingly not appropriate at this stage of the litigation. It is now appropriate to turn to a discussion of 1031 Canal's counterclaims.

### 2. Louisiana Unfair Trade Practices Act

In Count One, 1031 Canal alleges that Griffin violated the Louisiana Unfair Trade Practices Act ("LUPTA") by "price-gouging" with respect to the crane implosion project and coercing 1031 Canal to award Griffin the building demolition contract. R. Doc. 5 at 19–20. With respect to "price-gouging," 1031 Canal argues Griffin "took advantage of public and political pressure" in raising the price for the project from $1.25 million to $5 million within twenty-four hours despite knowing that the crane demolition did not need to be accomplished immediately and separately from the demolition of the entire building. R. Doc. 5 at 19. With respect to coercion, 1031 Canal alleges Griffin misrepresented key terms in the Memorandum of Understanding, lobbied City officials to demand that the contract be completed by Griffin, and filed the instant lawsuit. R. Doc. 5 at 20. Further, 1031 Canal alleges that Griffin's behavior has prevented it from "securing services from other contractors on better terms" and "chill[ed] other contractors from coming forward with competitive bids to perform the demolition . . . because Griffin had already mobilized its equipment." R. Doc. 5 at 20.

Griffin seeks dismissal of this counterclaim on that grounds that price-gouging is not cognizable under LUTPA. Griffin contends price-gouging claims are governed exclusively by Section 732 of the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("LHSEADA"), which does not provide a private cause of action, rather than LUTPA, which does. R. Doc. 44-1 at 5. Even if price-gouging was cognizable under LUTPA, Griffin argues, 1031 Canal failed to plead any specific facts demonstrating that Griffin charged an exorbitant price for the

services it provided.  Griffin also argues 1031 Canal failed to demonstrate that it suffered an ascertainable loss because the Emergency Public Work Agreement governing the project obligated the State, not 1031 Canal, to pay Griffin for the demolition.  R Doc. 44-1 at 6-7. Griffin further characterizes 1031 Canal's coercion-based LUTPA claim as a "repackaged inadequate breach of contract claim," because the coercion claim is based on alleged misrepresentations in the MOU. R. Doc. 44-1 at 8. With respect to lobbying the City to prevent 1031 Canal from contracting with third parties, Griffin contends the Counterclaim fails to include any factual allegations about specific communication or representations made by Griffin to the City that would demonstrate that Griffin exerted any influence over the City in the matter. R. Doc. 44-1 at 8–9.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and affords a private right of action to any person who suffers ascertainable loss as a result of such conduct. La. R.S. 51:1405(A).  What constitutes an unfair trade practice is determined on a case-by-case basis. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1054, 1059. Louisiana courts have confined unfair practices to those which "offend[] established public policy" and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). Further, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or free enterprise transactions," and there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Cheramie*, 35 So. 3d at 1060 (quoting *Turner*, 989 F.2d at 1422). In sum, unfair business practices under LUPTA are narrowly defined and "[b]usinesses in Louisiana are still free

to pursue profit, even at the expense of competitors, so long as the means used are not egregious." *Turner*, 989 F.2d at 1422.

1031 Canal has stated a LUTPA claim. First, 1031 Canal has standing to bring such a claim. Despite Griffin's insistence that the Emergency Public Works Agreement obligated the State, not 1031 Canal, to pay $5 million for the demolition of the cranes, 1031 Canal has alleged that it footed the bill and provided evidence supporting that fact.[2] 1031 Canal has also alleged that the contract price increased dramatically to $5 million in twenty-four hours without an appropriate basis for doing so. Accordingly, 1031 Canal has clearly stated that it suffered an ascertainable loss with respect to its price-gouging LUTPA claim.[3]

Second, 1031 Canal has identified two allegedly unfair business practices committed by Griffin: price-gouging and coercion. The Court recognizes that price-gouging in an emergency scenario is cognizable under LHSEADA, which does not permit a private cause of action. However, at least one other court has suggested that evidence of a statutory violation may be relevant to a LUTPA claim. *See Watercraft Mgmt. LLC v. Mercury Marine*, 1919 F. Supp. 2d 709 (M.D. La. 2001). In *Watercraft Management, LLC v. Mercury Marine*, the court dismissed a LUTPA claim on standing grounds not applicable in the instant case, but not before explaining that the defendant's alleged violation of a price-discrimination statute could serve as evidence of a LUTPA violation, despite the price-discrimination statute not providing for a private right of action. Despite Griffin's assertion to the contrary, *Watercraft* is instructive here. Had Canal sued under the LHSEADA, such claim would obviously be meritless as a matter of law. However, 1031

---

[2] In support, 1031 Canal has attached two checks reflecting payment of the $5 million for the crane demolition. These checks are central to 1031 Canal's claim because they are essential to the establishment of an element of a LUTPA claim—ascertainable loss—and therefore may be considered in the scope of this motion to dismiss.

[3] Griffin has not challenged 1031 Canal's standing with respect to the coercion-based LUTPA claims.

Canal has filed suit under LUTPA, not LHSEADA. Although Griffin avers *Watercraft* is inapplicable because the relevant passage is mere dicta and because the LUTPA claim was nevertheless dismissed, it has not pointed the Court to a single case addressing whether price-gouging is incompatible with LUTPA in the manner it suggests. Griffin is, of course, correct in noting that the price-gouging law, precluding a private cause of action, and LUTPA, allowing a private cause of action, must be "interpreted in reference to each other." La. Civ. Code art. 13. However the Court concludes that allowing alleged price-gouging to influence the LUTPA analysis does not defy this mandate, as an unfair business practice under LUTPA may constitute a wide panoply of actions that together constitute egregious and prohibited behavior.

The Court is also satisfied that 1031 Canal has stated a LUTPA claim based on coercion. 1031 Canal has pointed to three specific facts and/or practices it contends contribute to the coercive nature of Griffin's business practices. Accepting these factual allegations as true—that Griffin misrepresented its abilities and intentions when negotiating the MOU, lobbied City officials to prevent 1031 Canal from contracting with third parties, and filed the instant lawsuit in an attempt to absolve itself of the problems with the MOU—permits the inference that coercive business practices may have occurred. Further, the coercion-based LUTPA claims are not merely reconstituted breach of contract claims. Although LUTPA is not an alternative remedy for breach of contract claims, a "breach of contract can have deceptive and unethical 'undertones' that would allow a LUTPA claim to stand in addition to the breach of contract claims." *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 406 (E.D. La. 2016) (holding that a plaintiff had standing to bring a LUTPA claim in addition to a breach of contract claim when the allegations supporting the LUTPA claim were "similar to the breach of contract claim, but not identical . . ., since there are different elements alleged for each claim"). Here, the LUTPA claim is based on

allegations of more than the simple failure to perform contract terms, but rather the allegedly "'deceptive and unethical undertones' of Griffin's conduct." R. Doc. 45 at 8 (quoting *Tubos de Acero de Mexixo, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir. 2012)).

Ultimately, 1031 Canal alleges that Griffin engaged in unfair and deceptive business practices by taking advantage of a public emergency to charge exorbitant prices, making material misrepresentations regarding its ability to carry out the building demolition, coercing the local government to influence business decisions, and filing the instant lawsuit in an attempt to "subvert 1031 Canal's demolition plans." R. Doc. 45 at 8. Whether these allegations actually constitute unfair business practices under LUTPA is a question for another day. Because these activities could conceivably constitute unfair business practices and because 1031 Canal was allegedly harmed as a result, these allegations, taken as true at this stage in the proceedings, are sufficient to state a plausible claim under LUTPA.

### 3. *Tortious Interference with Business Relations*

In Count Two, 1031 Canal argues Griffin tortiously interfered with its business relations by improperly influencing the City of New Orleans to insist that Griffin be awarded the building demolition contract instead of Kolb Grading, a third party. R. Doc. 5 at 21. Griffin seeks dismissal of this claim, arguing 1031 Canal failed to state a claim, draws impermissible legal conclusions regarding interreference and actual malice, and fails to adequately plead that its actions prevented 1031 Canal from conducting business with a third party. R. Doc. 44 at 10.

Premised on Louisiana Civil Code article 2315 and the idea that "the right to influence others not to enter into business relationships with others is not absolute," claims for tortious interference with business relations are recognized under Louisiana law. *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128, 1134.

Such claims, however, are not favored. *Id.* at 1135. Significantly, "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4 Cir. 3/6/02), 812 So. 2d 834, 841. "The malice element requires proof of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *Id.* (citing George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 Loy. L. Rev. 395, 401 (1999)). This is an exacting standard, and courts in this state frequently observe that "there appear to be no reported cases in which anyone actually has been held liable for the tort." *Bogues*, 71 So. 3d at 1135 (quoting *JCD Mktg. Co.*, 812 So. 2d at 841). Ultimately, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff." *IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018) (citing *Bogues*, 71 So. 2d at 1134–35; *Henderson v. Bailey Bark Materials*, 116 So. 3d 30, 37 (La. App. 2 Cir. 2013)).

1031 Canal alleges that Griffin, "motivated by the prospect of windfall profits, ill will and spite," interfered with 1031 Canal's ability to conduct the demolition with the third-party contractor of its choice, causing 1031 Canal to suffer a financial loss and experience extensive delays. However, the pleadings are devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset. In fact, these allegations take the form of conclusory statements not sufficient for a well-pleaded complaint. The Court simply does not agree that 1031 Canal's allegations of ill will and spite "support a plausible inference . . . that Griffin was motivated . . . by an intent to punish 1031 Canal for not acquiescing to Griffin's efforts." R. Doc. 45 at 10.

Further, 1031 Canal has failed to demonstrate that Griffin in any way actually prevented it from contracting with a third party, and 1031 Canal's pleadings in fact reference a recently executed contract between 1031 Canal and Kolb with regards to the building demolition. R. Doc. 5 at 3. Accordingly, even accepting these allegations as true, 1031 Canal has not stated a plausible claim for tortious interference with business relations. However, the Court concludes that 1031 Canal should have the opportunity to amend its counterclaim to address this deficiency by pleading specific facts demonstrating that Griffin actually prevented 1031 Canal from contracting with third parties.

### 4. Fraud

In Count Three, 1301 Canal contends Griffin fraudulently negotiated the terms of the MOU. R. Doc. 5 at 21. Specifically, 1031 Canal argues Griffin misrepresented its ability to secure $50 million of liability insurance and complete the project for $15,650,000, as well as its intention to include 1031 Canal in all communications with the State and City and provide all necessary engineering. R. Doc. 5 at 22. 1031 Canal alleges that these misrepresentations were made in order to allow Griffin to obtain an unfair advantage or cause a loss to 1301 Canal. Griffin, in contrast, contends that these representations were not binding upon the parties and that these allegations lack the specificity required to adequately plead fraud.

Fraud is governed by Louisiana Civil Code article 1953, which provides:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

The three elements necessary to sustain an action for fraud are: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Sys.*

*Eng'g & Sec., Inc. v. Sci. & Eng'g Associations, Inc.*, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So. 2d 1089, 1091 (quoting *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D. La. 1995)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (alterations in original). In other words, "the who, what, when, and where must be laid out." *Id.* at 178.

1031 Canal has specifically pointed to four allegedly fraudulent misrepresentations made while negotiating the terms of the MOU and contained therein. Further, 1031 Canal alleges that reliance on these representations was justified because the parties intended the MOU to be binding. With respect to Griffin's mental state, 1031 Canal alleges, "Upon information and belief, Griffin knew at the time it made the above-referenced misrepresentations that the representations were false." R. Doc. 5 at 22. 1031 Canal suggests that Griffin was motivated to make such misrepresentations in order to contract with 1031 Canal for the demolition of the building and "capitalize on its belief that, based on the costs and political pressure associated with the passage of time, 1031 Canal would have no choice but to move forward with Griffin after Griffin's misrepresentations came to light." R. Doc. 5 at 22.

The operative question is whether 1031 Canal has sufficiently pled the intent element of a fraud claim. Federal Rule of Civil Procedure 9(b) provides, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of

fraud.'" *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (quoting *Tuchman*, 14 F.3d at 1068). "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *Willard*, 336 F.3d at 385.

The Court concludes that 1031 Canal has sufficiently pled scienter, and accordingly, has stated a claim for fraud. As an initial matter, the Court rejects Griffin's contention that the fraud claim is merely a regurgitated claim for breach of contract. Notably, 1031 Canal's fraud claim rests not on the fact that Griffin allegedly failed to comply with the MOU, but on the fact that Griffin allegedly knew, when negotiating the MOU, that the proffered terms would be impossible to satisfy. Additionally, 1031 Canal has successfully articulated sufficient facts to satisfy the enhanced pleading requirements for each element of a fraud claim. Although the intent element is pleaded generally, this is permissible under Rule 9(b) and 1031 Canal has made specific factual allegations and articulated a coherent theory regarding Griffin's possible motivation to deceive 1031 Canal into believing that the MOU's mutually satisfactory terms would be possible to achieve. Whether fraud actually occurred is a question that must be answered another day, after the opportunity for discovery. At this stage in the litigation, the claim stands.

### 5. *Breach of Contract: Memorandum of Understanding*

On Count Four, 1031 Canal alleges Griffin breached the MOU, a binding, enforceable contract, by: (1) claiming additional funds were necessary to obtain $50 million in insurance coverage; (2) claiming additional funds were necessary to obtain even $22 million in insurance coverage; (3) claiming that the work would be completed for the State of Louisiana and reserving 1301 Canal's role as the payor; and (4) refusing to provide engineering plans to 1031 Canal for review. R. Doc. 5 at 23. 1031 Canal contends this breach was committed in bad faith because

"Griffin intended to coerce 1031 Canal into accepting a more-expensive and less-desirable arrangement for demolishing the Building than was originally set forth in the Binding Memorandum." R. Doc. 5 at 23. Griffin argues 1031 Canal has failed to state a claim for breach of contract because the MOU is not a binding contract and because all allegations involving bad faith are conclusory allegations that fail to state a valid claim for relief.

To state a plausible breach of contract claim, a plaintiff must allege that (1) a contract existed between the parties; (2) defendant breached that contract, and (3) plaintiff suffered damages as a result. *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So. 3d 108, 119. 1031 Canal has stated a plausible claim for breach of contract against Griffin, since it has alleged that the MOU is an enforceable contract that Griffin breached by failing to comply with several material terms. 1031 Canal further alleges it has suffered damages, such as increased security costs and other delay damages as a result. R. Doc. 5 at 24. These allegations, taken as true during this stage of the litigation, are sufficient to state a claim for breach of contract.

### 6. Detrimental Reliance

On Count Five, 1031 Canal argues it detrimentally relied on Griffin's assertions, memorialized in the MOU, that it would provide complete demolition services for $16,650,000.00, procure $50 million of liability insurance, include 1031 Canal as a party to all communications with the state and city, and provide all necessary engineering. R. Doc. 5 at 24–25. 1031 Canal contends it relied on these representations as a basis for not moving forward with another contractor and that it was justified in so relying because the misrepresentations were set forth in the "binding" MOU. R. Doc. 5 at 25. Griffin argues 1031 Canal has failed to state a claim for detrimental reliance because the MOU in which these representations are contained was not

binding and specifically contemplates the execution of a "formalized" agreement that was never reached. Accordingly, Griffin argues any reliance on these representations is unreasonable. R. Doc. 5 at 20.

To state a claim for detrimental reliance, a plaintiff must point to "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59. 1031.

1031 Canal has stated a plausible claim for detrimental reliance, as it has alleged that Griffin made specific, material representations about its ability to perform that were contained in a document that the parties considered binding. 1031 Canal further alleges that its reliance on these terms was justified by the binding nature of the document and that reliance on these representations caused it to suffer a financial loss and various delays. Whether or not the MOU is in fact a binding and enforceable contract, and in turn whether reliance on its terms was actually justified, is a question for another day—at this stage, the Court must accept the allegations as true.

### 7. Duress

In Count Six, 1031 Canal alleges that it executed the agreement to demolish the two tower cranes under duress, as it was under "extreme political and public pressure . . . of such a nature as to cause a reasonable fear of unjust or considerable injury to 1031 Canal's property and/or reputation." R. Doc. 5 at 25. Specifically, 1031 Canal contends Griffin took advantage of the emergency situation in order to pressure 1031 Canal into paying an exorbitant price for the demolition of the tower cranes. R. Doc. 5 at 26. Griffin contends 1031 Canal lacks standing to bring this claim because it was not a party to the Emergency Public Works Agreement governing the crane implosion. R. Doc. 44 at 20. Further, Griffin argues 1031 Canal fails to state a claim for

duress because the complained of activity does not constitute legal duress and because there are no allegations that Griffin "applied the pressure that allegedly created duress." R. Doc. 44 at 20.

Article 1959 of the Louisiana Civil Code provides that "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause fear of unjust and considerable injury to a person's property, person, or reputation."' La. Civ. Code art. 1959. Such fear must be reasonable, and the reasonableness of a party's fear depends on personal circumstances. *Sumrall v. Ricoh USA, Inc.*, No. CIV.A. 15-00061, 2015 WL 4644328, at *7 (M.D. La. Aug. 4, 2015). Generally, "[e]conomic stress and emotional stress do not constitute legal duress under Louisiana law," *Sid-Mar's Rest. & Lounge, Inc. v. Gardner*, 02-1109 (La. App. 5 Cir. 3/25/03), 844 So. 2d 178, 183, nor does "mere stress of business conditions . . . if the opposing party did not engage in conduct designed to produce that stress." *Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 579 (E.D. La. 2001) (rejecting claim of economic duress "in the absence of evidence that defendants caused delays to put [Plaintiff] in extremis, so that they could thereafter make unjustified demands on [Plaintiff]"). Some courts, however, have allowed claims for economic duress where the economic duress is intentionally caused by the opposing party's actions. *See, e.g.*, *Sumrall*, 2015 WL 4644328.

Although 1031 Canal was not a party to the Emergency Public Works Agreement, 1031 Canal has pleaded sufficient facts to demonstrate that it has standing to bring this claim. Specifically, 1031 Canal has alleged that it footed the $5 million bill for the crane demolition and allowed the project to proceed, allegedly incurring an economic injury as a result. However, 1031 Canal has nevertheless failed to state a claim for duress. Specifically, 1031 Canal alleges it was forced to pay an exorbitant price for the crane demolition due in part to intense political and public pressure. In *Pellerin Construction. Inc. v. Witco Corp.*, the Court rejected an economic duress

claim where there was no evidence that the delay allegedly causing the duress was caused by the defendant. Similarly, here, the pressure felt by 1031 Canal was admittedly caused by political forces and public sentiment, not by Griffin.

The case 1031 Canal relies on, *Sumrall v. Ricoh USA, Inc.*, is inapposite. In *Sumrall*, the court declined to dismiss an economic duress claim when defendant, a printer service company, allegedly threatened to withhold services that had already been contracted and paid for in an attempt to force plaintiff to agree to a higher service contract price. Specifically, the court concluded "it was Defendant's conduct that *created* the fear of economic duress." *Sumrall*, 2015 WL 4644328, at *9 (emphasis added). This finding makes *Sumrall* distinguishable from the instant matter. Here, a public emergency and the political and public pressure resulting therefrom caused the need to resolve the problem quickly. Any contract 1031 Canal negotiated for the crane implosion would be colored by the political and social pressure, but Griffin cannot be charged with having caused or otherwise "created the fear of economic duress." *Id.* Accordingly, even if economic duress can, in some circumstances, constitute legal duress, the claim fails in the instant case.

### 8. *Breach of Contract: Crane Implosion*

In Count Seven, 1031 Canal raises an alternative claim for breach of contract with respect to the crane implosion contract. Griffin argues dismissal is warranted because 1031 Canal lacks standing and failed to state a claim. R. Doc. 44 at 23. In opposition, 1031 Canal argues it has standing despite not being a party to the Emergency Public Works Agreement because it paid for the demolition and was the ultimate obligee of the contract. R. Doc. 45 at 21. 1031 Canal explains that the Emergency Public Works Agreement between Griffin and the State "was only implemented to provide Griffin with immunity." R. Doc. 45 at 21.

As the Court has previously concluded, 1031 Canal has standing to bring claims related to the crane demolition project because it allegedly paid for the demolition to be completed. Further, the Court concludes that 1031 Canal has stated a claim for breach of contract with respect to the crane implosion project because 1031 Canal has alleged that Griffin undertook the obligation to perform the crane implosion project for 1031 Canal's benefit and failed to perform in the manner contemplated by the parties by leaving pieces of the cranes precariously positioned on the premises in a manner that caused harm to 1031 Canal. 1031 Canal's opposition makes it clear that the Emergency Public Works Agreement "is not the contract on which 1031 Canal's claim is premised." R. Doc. 45 at 20. Instead, the breach of contract claim is premised on the understanding between 1031 Canal and Griffin that 1031 Canal would pay Griffin $5 million in exchange for the the demolition of the cranes. The Emergency Public Works Agreement crucially defines the relationship between Griffin and the State of Louisiana—not Griffin and Canal. Whether a contract actually existed, and whether it was breached, is a question for another day. At this stage in the litigation, the Court accepts as true that Griffin undertook an obligation to perform the crane demolition and did so unsatisfactorily. Accordingly, the Court declines to dismiss this counterclaim.

### IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Griffin's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to 1031 Canal's counterclaim for duress. It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that 1031 Canal amend its complain within thirty days of this Order to address the deficiencies identified with respect to its claim for tortious interference

with business relations. In the event 1031 Canal does not sufficiently amend its complaint in a timely manner, the Court will dismiss this claim with prejudice.

New Orleans, Louisiana this 29th day of May, 2020.

_____
Eldon  E. Fallon
United  States District Judge