# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| D. H. GRIFFIN WRECKING COMPANY, INC. | CIVIL ACTION NO. 20-cv-01051 |
| | SECTION "L" (3) |
| versus | JUDGE ELDON E. FALLON |
| 1031 CANAL DEVELOPMENT, LLC | MAGISTRATE JUDGE DANA M. DOUGLAS |
| | JURY TRIAL DEMANDED |

### MEMORANDUM OF D. H. GRIFFIN WRECKING COMPANY, INC. IN SUPPORT OF MOTION TO DISMISS AMENDED TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS CLAIM BY 1031 CANAL DEVELOPMENT, LLC

D. H. Griffin Wrecking Company, Inc. ("D.H. Griffin") submits this memorandum in support of its Motion to Dismiss the amended tortious interference with business relations claim of 1031 Canal Development, LLC ("1031").[1]

## I. Introduction

1031's original tortious interference claim pleaded that "Griffin, 'motivated by the prospect of windfall profits, ill will and spite,' interfered with 1031 Canal's ability to conduct the demolition with the third-party contractor of its choice, causing 1031 Canal to suffer a financial loss and experience extensive delays."[2] In granting D.H. Griffin's motion to dismiss this claim, this Court found that 1031's "pleadings [were] devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset. In fact, these allegations take the form of conclusory statements not sufficient for a well-pleaded complaint."[3] This Court concluded that it "[did] not agree that 1031

---

[1] 1031 filed its Amended Answer, Affirmative Defenses, and Counterclaims (ECF 64) on June 30, 2020. The tortious interference with business relations claim begins on page 18 of that pleading. All record page citations herein are to the ECF page, unless otherwise stated.

[2] Order and Reasons (ECF 54) at 13.

[3] *Id.*

Canal's allegations of ill will and spite 'support a plausible inference . . . that Griffin was motivated . . . by an intent to punish 1031 Canal for not acquiescing to Griffin's efforts,'"[4] and that "1031 Canal has failed to demonstrate that Griffin in any way actually prevented it from contracting with a third party, and 1031 Canal's pleadings in fact reference a recently executed contract between 1031 Canal and Kolb with regards to the building demolition."[5]

The Court granted 1031 leave to amend "to address this deficiency by pleading specific facts demonstrating that Griffin actually prevented 1031 Canal from contracting with third parties."[6]  1031 has attempted to cure the deficiency by alleging new and different interferences—"prevent[ing] 1031 Canal from dealing with the City (in obtaining a permit) and Kolb (in moving forward with the demolition)"[7]—which occurred over the space of approximately one month. 1031's amended tortious interference claim fails in two respects.  First, 1031, while acknowledging that "actually prevent[ing] the plaintiff from dealing with a third party" is an essential claim element,[8] does not, and could not, plead any facts demonstrating that 1031 was actually prevented from dealing with either Kolb or the City.  Second, as in the original counterclaim, 1031's second attempt at stating a claim is "devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset" and its "allegations take the form of conclusory statements not sufficient for a well-pleaded complaint."[9]  Accordingly, 1031's amended tortious interference claim must be dismissed for failure to state a claim upon which relief can be granted.

---

[4] ECF 54 at 13.
[5] *Id.* at 14.
[6] *Id.*
[7] ECF 64 at 121, ¶ 57.
[8] ECF 64 at 18, ¶ 49.
[9] ECF 54 at 13.

## II.   Failure to Plead Interference

This Court recognized in its May 29, 2020 Order & Reasons that intentional interference with business relations requires the defendant to have "actually prevented the plaintiff from dealing with a third party."[10]   1031 expressly acknowledges that actually preventing the plaintiff from dealing with a third party is an essential claim element.[11]   1031 cannot credibly plead that it was actually prevented from contracting with Kolb or that it was actually prevented from obtaining a demolition permit because it is undisputed and admitted by 1031 that it contracted with Kolb for the Hard Rock Building demolition and obtained a permit from the City of New Orleans for that demolition.

1031 conspicuously omits allegations concerning its contract with Kolb in the amended counterclaim, because this Court has already found that "1031 Canal's pleadings in fact reference a recently executed contract between 1031 Canal and Kolb with regards to the building demolition."[12] 1031 attempts to circumvent this inconvenient fact by pleading the existence of a "relevant period" of actual prevention that runs from "the date 1031 Canal informed the City that it no longer wanted to use Griffin . . . and ends on the date that 1031 Canal finally obtained a demolition permit from the City."[13]   This maneuver is unavailing for three reasons:  First, the required claim element is "actually prevented," not temporarily prevented.  Second, 1031's allegations are "devoid of any specific facts involving the actions taken by Griffin" to prevent 1031 from contracting with Kolb.  Finally, the allegations are demonstrably untrue based on public record filings made by 1031. The City permit file pertaining to the demolition of the Hard Rock

---

[10] *Id.*

[11] ECF 64 at 18, ¶ 49.

[12] *Id.* at 14 (citing ECF 5 at 3).  *See also* ECF 44-3 at 1-65 (1031 filing contract with Kolb in Civil District Court); ECF 45 at 23 (1031 admission that "1031 executed a demolition contract with Kolb").

[13] ECF 64 at 18, ¶ 51.

building is a matter of public record.[14] The download link on the webpage leads to numerous documents,[15] most significant of which are the building permit issued by the City on April 30, 2020,[16] 1031's April 29, 2020 Submission Showing Compliance with Administrative Judgment,[17] and 1031's March 20, 2020 contract with Kolb.[18] The Kolb contract is dated March 20, 2020, four days ***before*** 1031 "informed Griffin that 1031 Canal could not move forward with Griffin as the contractor."[19] Accordingly, there is no possible way, let alone a plausible way, that D.H. Griffin interfered with 1031 entering into a contract with Kolb, even temporarily, after March 24; the agreement was already signed. "Specific facts," which are conspicuously absent from the amended counterclaim, negate the existence of a tortious interference claim based on the Kolb contract.

1031's allegations pertaining to the demolition permit and moving forward with Kolb fare no better. Again, the required claim element is "actually prevented," not temporarily prevented, and 1031 admits it received a demolition permit from the City of New Orleans.[20] Second, 1031's allegations are "devoid of any specific facts involving the actions taken by Griffin" to prevent 1031 from obtaining a building permit from the City. Finally, 1031's April 29 submission to the City recounts almost daily communications between 1031 and the City during the period from

---

[14] *See* Exhibit A. In determining whether to grant a Rule 12(b)(6) motion "a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, ***matters of public record***, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x. 408, 409 (5th Cir. 2013) (per curiam) (citing cases, emphasis added); *Jacobs v. LPP Mortg. Ltd.*, No. 18-6367, 2018 U.S. Dist. LEXIS 175125 (E.D. La. October 11, 2018) (citing *Meyers* and additional cases).

[15] *See* Exhibit B.

[16] "Building Permit.pdf" attached as Exhibit C.

[17] "4 29 2020 FROM 1031 OWNERSHIP 2020-03-12 1031 Canal Development's Submission Showing Compliance w Admin Judgment City of New Orleans v 1031 (003).pdf" attached as Exhibit D.

[18] "Signed contract.pdf" attached as Exhibit E.

[19] ECF 64 at 14, ¶ 31.

[20] ECF 64 at 18, ¶ 51.

March 27, 2020 (the date of 1031's permit application)[21] to April 30, 2020 (the date the demolition permit issued).[22] The allegation that "Griffin's interference in 1031 Canal's efforts to obtain a permit actually prevented 1031 Canal from dealing with the City" is a wholesale fabrication. Likewise, the allegation that D.H. Griffin "prevented 1031 Canal from dealing with . . . Kolb (in moving forward with the demolition)" lacks merit because Kolb could not move forward with the demolition until the City issued the permit, on April 30, which is the last day of the alleged interference period.[23] Finally 1031 and Kolb could not move forward with the demolition of the building until the Civil District Court authorized them to do so. On March 30, 2020, 1031 moved that Court to "[a]mend certain orders of the Court relating to the preservation of tangible evidence and building materials located at 1031 Canal Street. New Orleans, Louisiana 70112 (the "Site") to allow for demolition of and debris disposal from the Site . . . ."[24] The Civil District Court did not authorize the demolition of the building until May 4, 2020.[25] There is no possible way, let alone plausible way, that D.H. Griffin interfered with Kolb's demolition work during a period when Kolb wasn't even authorized to perform that work.

1031's creation of an arbitrary and inaccurate time period of alleged interference prior to its contract with Kolb and permit issuance by the City are admittedly no more than a "period of delay,"[26] and does not establish a plausible claim that D.H. Griffin "actually prevented" 1031 from

---

[21] Exhibit D at 3.

[22] Exhibit C; *see generally* Exhibit D at 2-5.

[23] ECF 64 at 18, ¶ 51.

[24] *See* Exhibit F, 1031's Motion for Approval of Site Demolition, Entry of Evidence Preservation Protocol, and for Expedited Hearing filed in *Elias Membreno v. 1031 Canal Investments, LLC*, No. 2019-10819, Civil District Court for Orleans Parish.  *See also* Memorandum in Support at 2-3 (describing evidence preservation and injunction orders).

[25] *See* Exhibit G, Order signed May 4, 2020, in *Elias Membreno v. 1031 Canal Investments, LLC*, No. 2019-10819, Civil District Court for Orleans Parish.

[26] ECF 64 at 21, ¶57.

dealing with Kolb or the City.  "[I]t is not enough to allege that a defendant's actions affected plaintiff's business interests . . . ."  *Metcalfe & Sons Invs., Inc. v. Multiquip, Inc.*, 2011 U.S. Dist. LEXIS 110551, at *8 (M.D. La. Sep. 27, 2011).  1031's allegation of a "period of delay" during its arbitrary timeframe is, at most, an allegation that D.H. Griffin's actions "affected [1031]'s business interests," and the fact that 1031 was not actually prevented from contracting with Kolb, securing a permit from the City, or moving forward with Kolb is fatal to the tortious interference claim.

Finally, assuming arguendo that 1031's novel temporary interference claim had a legal basis, 1031 has failed to plead factual allegations to support the legal cornerstone of its entire theory—that D.H. Griffin exerted any influence over decision-making by the City of New Orleans regarding demolition of the Building—which is the only way D.H. Griffin's alleged interference could have prevented 1031 getting approval from the City to contract with Kolb, or obtaining a demolition permit from the City.  This allegation is not only devoid of any factual support, but is completely illogical because if D.H. Griffin had such outsized influence, it, not Kolb, would be demolishing the building.  As it does not make sense, it does not "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III.    Failure to Plead Actual Malice

As this Court held in its May 29, 2020 Order & Reasons, "actual malice" is an element of a tortious interference with business relations claim.[27]  "'The malice element requires proof of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which

---

[27] ECF 54 at 13.

conduct is driven by the profit motive, not by bad feelings.'"[28]  Even the act of convincing third parties not to do business with a competitor fails to state a claim, because businesses have "a legitimate business interest in influencing others not to deal with the plaintiff." *Whitney Bank v. SMI Cos. Glob.*, 949 F.3d 196, 208 (5th Cir. 2020), citing *Lewis v. Huie-Hodge Lumber Co.*, 46 So. 685, 686 (La. 1908). "The animus . . . to protect and safeguard [one's] business interest" does not rise to the level of tortious interference with business relations. *Lewis*, 46 So. at 686; *see Whitney Bank*, 949 F.3d at 208 (citing and following *Lewis*).

At the outset, 1031's tortious interference claim, including the malice element, is pleaded on the basis of "information and belief" or "belief"[29] without stating the basis of 1031's belief. This is a fatal pleading error. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) ("where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.").  Further, while 1031 repeatedly recites the legal conclusions of "malice," "ill will," and "spite," 1031 cites not a single fact that, if accepted as true, could lead to the legal conclusion that D.H. Griffin harbored "malice," "ill will," or "spite" toward 1031.  As in the case of the original tortious interference claim, the amended claim is "devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset. In fact, these allegations take the form of conclusory statements not sufficient for a well-pleaded complaint."[30]

1031's newly-created theory that D.H. Griffin acted in retaliation when 1031 "moved on" to another contractor, is not plausible and contradicts 1031's own Amended Counterclaim.  The

---

[28] ECF 54 at 13 (quoting *Bogues v. La. Energy Consultants, Inc.*, 46434 (La. App. 2 Cir. 08/10/11); 71 So. 3d 1128, 1135).

[29] ECF 64 at 19-20, ¶¶ 52 ("Griffin is believed"); 53 ("Griffin is thus believed"); 54 ("Upon information and belief"); 55 ("Griffin is believed"); and 56 ("Upon information and belief").

[30] *Id.*

tortious interference with business relations claim expressly alleges D.H. Griffin was acting out of a legitimate business interest to prevent another contractor from being approved for the Hard Rock Building demolition.  Paragraphs 52 and 53 of 1031's Amended Counterclaim assert D.H. Griffin's alleged actions were based on its desire to have the City require an implosion of the Hard Rock Building by D.H. Griffin—something that would have furthered D.H. Griffin's commercial interest.[31] 1031 alleges D.H. Griffin "is thus believed to have continued (**for its own benefit**) to press the City towards approving only an implosion."[32] D.H. Griffin—a demolition contractor— acting "for its own benefit" to secure a demolition contract, is exactly the profit motive and legitimate business interest that a tortious interference with business relations claim cannot reward. *Bogues*, 71 So. 3d at 1135; *Lewis*, 46 So. at 686; *Whitney Bank*, 949 F.3d at 208.

Furthermore, 1031's "Factual Allegations" and Louisiana Unfair Trade Practices Act claim, which are expressly incorporated within the amended tortious interference with business relations claim,[33] make plain that the best 1031 is able to allege is that D.H. Griffin acted to further its own commercial interest:

- "Notwithstanding the notice on March 24, 2020, Griffin has continued to interfere with 1031 Canal's efforts to move forward with alternate demolition plans. Upon information and belief, **Griffin continues to lobby government officials to require 1031 Canal to agree to an under-insured demolition contract to Griffin.**"[34]

- Griffin engaged, and continues to engage, in an unfair trade practice to coerce (and now cover up its efforts to coerce) 1031 Canal into **awarding Griffin the contract**

---

[31] ECF 64 at 19.

[32] ECF 64 at 19 (emphasis added).

[33] ECF 64 at 18.

[34] ECF 64 at 14 (emphasis added).  Notably, March 24, 2020 is the date upon which 1031 starts its arbitrary interference timeframe.  The allegation that D.H. Griffin was acting in order to secure a demolition contract, even after March 24, 2020, makes its "retaliation" argument implausible because, according to 1031, D.H. Griffin was pursuing the building demolition contract since at least January 2020.  *See* ECF 5 at 2 (1031's Introductory Statement incorporated by reference in the amended counterclaim); ECF 64 at 12 (¶¶ 22-23), 21 (¶ 61), 24 (¶ 79).

> **to demolish the Building**, including by (1) misrepresenting key terms in the Binding Memorandum, (2) lobbying the City on an ongoing basis to demand that 1031 Canal **award the contract to Griffin and implode the Building**, and (3) filing and pursuing this lawsuit to have the Binding Memorandum declared "unenforceable, invalid, and . . . not a binding contract under Louisiana law."[35]

"[A]n intent to maximize profits or garner more business is not 'malice,'" and 1031 cannot escape its own allegations that D.H. Griffin's alleged activity, which commenced in January, was motivated by an intent to maximize profits and garner more business. *Metcalfe & Sons Invs., Inc. v. Multiquip, Inc.*, 2011 U.S. Dist. LEXIS 110551, at *9 (M.D. La. Sep. 27, 2011).

1031's allegations are insufficient to plead actual malice. This is especially true, given 1031's repeated acknowledgement the D.H. Griffin had a legitimate business interest and profit motive in pursuing the building demolition contract. In *Bogues*, the Louisiana Second Circuit Court of Appeal dismissed a tortious interference with business relations claim because the allegations fell "short of the malice, ill will or spite element that must be pleaded in the petition to sufficiently state a cause of action for tortious interference with business." *Id.* This, despite allegations that a party "had engaged in a campaign to discredit [claimant]" in claimant's negotiations with third parties, so that the party could cancel contracts with the claimant and deal with the third parties itself. *Id.* at 1130.

In *Towery Publ'g v. Cmty. Communs.*, 1996 U.S. Dist. LEXIS 7152, at *6-7 (E.D. La. May 17, 1996), this Court held the "Plaintiff has not alleged malice in its petition as part of its claim for tortious interference." The Court addressed allegations by the plaintiff, who intended to publish a book about New Orleans, that:

> defendant also decided to publish a book about New Orleans. Plaintiff alleges that defendant contacted the Mayor's Office in a successful attempt to convince the Mayor to withdraw his support from plaintiff's book project. Plaintiff also alleges that defendant 'intentionally misrepresented the facts of plaintiff's operations in

---

[35] ECF 64 at 17 (emphasis added).

> New Orleans' in its efforts to persuade local businesses and the public agencies not to participate in plaintiff's book project. These alleged misrepresentations included the statement that plaintiff's book project was not supported or authorized by the City of New Orleans. Plaintiff contends in its complaint that defendant's actions resulted in the resignation of plaintiff's two sales representatives and the loss of some of its business accounts.

*Id.* at *2. The Court "reject[ed] plaintiff's arguments that its allegations of intentional and improper interference satisfy its obligation to plead the essential element of malice." *Id.* at *7.

This case is almost identical to *Towery Publ'g*, as 1031 Canal argues D.H. Griffin lobbied the City not to support 1031 Canal's contractor, Kolb. As in *Towery Publ'g*, this Court should reject 1031 Canal's arguments that its allegations of intentional and improper interference satisfy its obligation to plead the essential element of malice. *Id.* at *7.

The Amended Counterclaim, even with 1031's new theory about retaliation, does not plausibly state a claim for tortious interference with business relations because it alleges D.H. Griffin was motivated by business interests and profits. 1031 Canal even alleges D.H. Griffin is motivated by "the prospect of windfall profits," undercutting any argument that D.H. Griffin is motivated by actual malice.[36] Without a plausible claim of actual malice, the claim fails to state a claim upon which relief can be granted.

## IV. Conclusion

1031 was ordered to amend its tortious interference with business relations claim because its original claim was "devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset," contained conclusory statements not sufficient for a well-pleaded complaint, failed to support a plausible inference that D.H. Griffin was motivated by an intent to punish 1031, and failed to demonstrate that D.H. Griffin actually prevented 1031 from contracting

---

[36] ECF 64 at 21.

with Kolb. The amended tortious interference claim has not cured these deficiencies. The amended claim is "devoid of any specific facts involving the actions taken by D.H. Griffin or its mindset." Its conclusory statements fail to support a plausible inference that D.H. Griffin was motivated by an intent to punish 1031. Finally, the claim is predicated on a novel and legally unsupported temporary "period of delay" because 1031 cannot plead that it was "actually prevented" when it acknowledges that it successfully contracted with Kolb Grading and obtained a demolition permit from the City of New Orleans. 1031's amended tortious interference with business relations claim must be dismissed for failure to state a claim upon which relief can be granted.

Dated: August 19, 2020                                      Respectfully submitted,

RICHARD J. TYLER, T.A. (La Bar No. 1155)
ALLISON B. KINGSMILL (La Bar No. 36532)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Telephone: (504) 582-8266
Fax: (504) 589-8266
Email: rtyler@joneswalker.com
        akingsmill@joneswalker.com

*s/ F. Gibbons Addison*
F. Gibbons Addison (La. Bar No. 35426)
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2000
Fax: (225) 248-3160
Email: gaddison@joneswalker.com
*Counsel for D. H. Griffin Wrecking Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2020, I filed the foregoing pleading via the court's CM/ECF system, through which this pleading has been served upon counsel of record.

*s/ F. Gibbons Addison*