UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **D.H. GRIFFIN WRECKING COMPANY, INC.** | CIVIL ACTION |
| VERSUS | NO. 20-1051 |
| **1031 CANAL DEVELOPMENT, LLC** | SECTION "L" (3) |

## ORDER & REASONS

Before the Court is a motion by Plaintiff D.H. Griffin Wrecking Co., Inc. to dismiss Defendant 1031 Canal Development, LLC's amended tortious interference with business claim. R. Doc. 77. Defendant opposes the motion, R. Doc. 87, and Plaintiff replied, R. Doc. 104. Having considered the applicable law and heard oral argument, the Court now rules as follows.

I.  **BACKGROUND**

This declaratory judgment action arises out of the partial collapse of the Hard Rock Hotel under construction at 1031 Canal Street, New Orleans, Louisiana, on October 12, 2019. R. Doc. 1 ¶ 7. Plaintiff D.H. Griffin Wrecking Co., Inc ("Griffin") is a demolition contractor engaged by Defendant 1031 Canal Development, LLC, ("1031 Canal"), the company overseeing the development of the Hard Rock Hotel, and the State of Louisiana. Plaintiff Griffin was engaged to demolish two tower cranes that were damaged during the structural collapse of the hotel. The cranes were demolished on October 20, 2019. *Id.* ¶ 12.

Following the demolition of the cranes, Griffin and 1031 Canal began discussing the demolition of the building itself. *Id.* ¶ 13. The parties ultimately memorialized the terms and conditions of their agreement in a signed document entitled "Binding Memorandum of Understanding of Demolition (Project)" ("MOU"). *Id.* ¶ 15. In relevant part, the MOU provided

1

that Griffin would secure $50 million in insurance coverage and that the parties would formalize the agreement through a "good faith negotiation within seven (7) days." *Id.* ¶ 19. Despite continued negotiations, the parties were unable to reach a formal agreement within seven days, allegedly for two reasons. First, because the State refused to indemnify Griffin, an issue Griffin characterizes as "a foundational premise of Griffin engaging to do the demolition work, as contemplated by the Memorandum of Understanding," and second, because Griffin was only able to secure a commitment for $22 million in insurance coverage. *Id.* ¶ 21. 1031 Canal allegedly refused to formalize the agreement without $50 million in insurance as specified in the MOU. *Id.* ¶ 23. On March 28, 2020, 1031 Canal sent Griffin a Cease and Desist Letter claiming that Plaintiff has breached its obligations under the MOU. *Id.* ¶ 24.

Based on the foregoing, Griffin filed the instant declaratory judgment action seeking a "determination of the validity and the enforceability of the Memorandum of Understanding under Louisiana law and 1031 Canal's entitlement to claim damages for breach of contract." *Id.* ¶ 30. Essentially, Griffin argues the MOU is not a binding contract capable of being breached. Rather, in Griffin's view, it is merely a "term sheet of 'hoped for' contract terms." *Id.* ¶ 25.

Defendant 1031 Canal answered the complaint, providing a notably different interpretation of the facts. Specifically, 1031 Canal alleges that Griffin engaged in nefarious price gouging with respect to the tower crane demolition contract, but that 1031 Canal had no choice but to acquiesce due to intense political pressure from the State of Louisiana, City of New Orleans, and the public.[1] R. Doc. 5 at 13. 1031 Canal laments the obstacles preventing the timely demolition of the building

---

[1] Defendant argues the demolition of the cranes was not satisfactorily performed, as "[o]ne crane remain speared into Rampart Street, and the other hangs over Canal Street." R. Doc. 5 at 13. Defendant also alleges that after the demolition was complete, it learned that the demolition was actually unnecessary, as the cranes could have been removed as part of a larger implosion or comprehensive demolition plan. R. Doc. 5 at 13. Defendant charges Plaintiff with "us[ing] its superior knowledge to take advantage of 1031 Canal and the City's relative lack of sophistication with respect to demolitions—which in turn allowed Griffin to gain a foothold in discussions for the larger contract to demolish the Building." R. Doc. 5 at 13.

and charges Plaintiff with having a "central role in orchestrating these delays." *Id*. at 2. The MOU, according to 1031 Canal, was negotiated with Griffin at the request of City officials. *Id*. at 14–15. 1031 Canal also specifically argues that the MOU was contemplated as a binding contract, despite the fact that the "exact scope of 'services' would be formalized in a good-faith negotiation." *Id*. at 15. 1031 Canal contends, "The binding nature of the 'Binding' Memorandum was expressly understood by everyone, including Griffin, to be a material inducement of 1031 Canal's consent, particularly because of Griffin's past actions and misrepresentations with respect to the crane implosion." *Id*. at 15. Despite 1031 Canal's refusal to commit to the under-insured project, it alleges that "Griffin continues to lobby government officials to require 1031 Canal to agree to an under-insured demolition contract to Griffin." *Id*. at 17.

Based on these allegations, 1031 Canal additionally raises eight counterclaims against Griffin. These claims involve violations of the Louisiana Unfair Trade Practice Act ("LUTPA"), tortious interference with business relations, fraud, breach of contract, detrimental reliance, and duress. On May 29, 2020, the Court issued an Order and Reasons granting in part and denying in part Griffin's Motion to Dismiss all of Defendant's Counterclaims. The Court dismissed 1031 Canal's counterclaim for duress and granted leave to amend with respect to the counterclaim for tortious interference with business relations "by pleading specific facts demonstrating that Griffin actually prevented 1031 Canal from contracting with third parties." The motion was denied with respect to all other counterclaims. R. Doc. 54 at 13–14.

1031 Canal then filed an Amended Answer, Affirmative Defenses, and Counterclaim. R. Doc. 64. Relevant here, 1031 Canal amended its tortious interference with business relations counterclaim to plead a specific period of time from March 24, 2020, the date that 1031 Canal informed the City and Griffin that it no longer wanted to use Griffin as the demolition contractor,

3

to April 30, 2020, the date that 1031 Canal finally obtained a demolition permit from the City. R. Doc. 64 ¶ 51. 1031 also now alleges new interferences, mainly that Griffin "prevent[ed] 1031 Canal from dealing with the City (in obtaining a permit) and Kolb (in moving forward with the demolition)." *Id*. ¶ 57. In support of this claim, 1031 Canal alleges that Griffin actively lobbied the City to prevent the issuance of a demolition permit, advocated for an implosion rather than a demolition, and refused to demobilize equipment from the site around the Building. *Id*. ¶¶ 52–56.

## II. PRESENT MOTION

Griffin now seeks to dismiss 1031 Canal's amended tortious interference with business relations claim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. R. Doc. 77. First, Griffin maintains that 1031 Canal cannot show that it was "actually prevented from dealing with" a third party because it is undisputed that 1031 did in fact contract with Kolb Grading ("Kolb") for the Building demolition and obtained a permit from the city of New Orleans to do so. *Id* at 3. Second, Griffin argues that 1031 Canal's tortious interfere with business relations claim remains "devoid of any specific facts involving the actions taken by Griffin in this regard or its mindset," just as in the original complaint. *Id* at 2. Third, Griffin argues that 1031 Canal has not demonstrated any "actual malice" on the part of Griffin, which is a necessary element of a tortious interference with business relations claim. *See* R. Doc. 54 at 13.

1031 Canal opposes the motion. 1031 Canal contends that the amended tortious interference claim is "premised on the [approximately month-long] delay caused by Griffin's malicious interference."[2] R. Doc. 87 at 4. Specifically, 1031 Canal argues that Griffin's lobbying efforts and its refusal to demobilize equipment actually prevented 1031 from obtaining a permit from the City

---

[2] The alleged period of temporary interference was from the date 1031 Canal informed Griffin it could not move forward with Griffin (March 24, 2020) to the date on which 1031 Canal obtained a demolition permit (April 30, 2020). R. Doc. 87 at 4.

and relatedly, from moving forward with Kolb, since an obtaining permit was a necessary perquisite. *Id.* at 13–15. 1031 Canal further argues that the Amended Complaint supports a plausible claim that "Griffin exerted decision-making influence over the City to prevent 1031 Canal's chosen demolition plan from moving forward" in retaliation against 1031 Canal for ending their business relationship. *Id.* In reply, Griffin contends that 1031 still failed to meet the "actually prevented" standard, rendering its other arguments about Griffin's controlling influence over the City of New Orleans—"that 1031 was ultimately able to overcome"—futile. R. Doc. 104.

### III.   LAW & ANALYSIS

#### a.  Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court must construe facts in the light most favorable to the nonmoving party, *id.,* and it "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

In order to demonstrate a claim for tortious interference with business relations, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff." *IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018) (citing *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2d Cir. 8/10/11), 71 So. 3d 1128, 1134-35; *Henderson v. Bailey Bark Materials*, 116 So. 3d 30, 37 (La. App. 2d Cir. 2013)).

Notably, Louisiana "jurisprudence has viewed this cause of action with disfavor." *Bogues*, 71 So. 3d at 1135. Courts have limited this claim by requiring that "the plaintiff show the defendant acted with actual malice." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4th Cir. 3/6/02), 812 So. 2d 834, 841. Actual malice "requires proof of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *Id.* (citing George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 LOY. L. REV. 395, 401 (1999)). In fact, Louisiana courts frequently observe that "there appear to be no reported cases in which anyone actually has been held liable for the tort." *See B & S Equip. Co. v. Cent. States Underwater Contracting, Inc.,* No. 19-14769, 2020 WL 1953614, at *4 (E.D. La. Apr. 23, 2020); *Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 3400696, at *2 (M.D. La. July 26, 2019); *Iberiabank v. Broussard,* No. 14-2448, 2017 WL 6816554, at *1 (W.D. La. Mar. 17, 2017).

### b. Tortious Interference with Business Relations

In the present case, 1031 Canal's Amended Counterclaim fails to establish the necessary elements of a tortious interference with business relations claim. First, 1031 Canal cannot plausibly claim it was "actually prevented" from dealing with a third party. *See Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 207 (5th Cir. 2020) ("It is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.") (internal citations omitted). To show actual interference, 1031 alleges that Griffin "prevent[ed] 1031 Canal from dealing with the City (in obtaining a permit) and Kolb (in moving forward with the demolition)." *Id.* ¶ 57. These allegations are unavailing because 1031 did in fact enter into a contract with Kolb on March 20, 2020[3] and received a demolition permit from the City of New Orleans on April 30, 2020. R. Doc. 77-4; 77-6.[4] Furthermore, public record reveals frequent communications between 1031 and the City during the relevant period. *Id.* Also, 1031 failed to offer specific allegations that Griffin exerted any influence over decisionmaking by the City regarding demolition of the Building.[5] As Plaintiff points out, if Griffin had such significant influence over the City, Griffin, not Kolb, would be demolishing the building. *Id* at 6. As for Griffin preventing Kolb from proceeding with the demolition, the Civil District Court did not even authorize the Building's demolition until May 4, 2020.[6] *See* R. Doc. 77-8 (amending certain preservation orders to allow

---

[3] Notably, this is four days before 1031 allegedly informed Griffin it was no longer the contractor.
[4] In examining a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x. 408, 409 (5th Cir. 2013) (per curiam) (citing cases).
[5] Instead, 1031 relies on conclusory statements, such as "Griffin worked with City officials to erect obstacle after obstacle to 1031's application permit." R. Doc 64 ¶ 56.
[6] At oral argument, Griffin indicated that these same court orders restricted its ability to demobilize its equipment from the site.

for convention demolition of the Building). Given these facts, the Court cannot find that the roughly month-long period of delay in obtaining a permit constitutes "actual prevention."

Second, 1031 Canal has not set forth a plausible claim that Griffin's alleged actions were motivated by malice, rather than profit. "To plead actual malice, a party must plead sufficient factual matter concerning the acts or statements reflecting malice to support an inference that [a defendant's] actions in a commercial context were motivated by the requisite spite or ill will rather than profit." *Southeastrans, Inc. v. Landry*, No. 20-CV-00086, 2021 WL 712507, at *3 (W.D. La. Feb. 23, 2021). 1031 has not done so here. 1031 Canal alleges that Griffin "actively lobbied City officials" to prevent the City from issuing a demolition permit by "misrepresenting the desirability of an implosion rather than a conventional demolition." R. Doc. 64 ¶ 53. However, as a contractor specializing in implosion demolition, Griffin clearly had a legitimate commercial interest and profit motive in pursuing the demolition contract. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981) (noting Louisiana law permits "interferences designed to protect a legitimate interest of the act"). For instance, in *Lewis v. Huie-Hodge Lumber Co.*, the Louisiana Supreme Court found that the defendant mill company was not liable for tortious interference with business when it threatened to fire employees who shopped at competitor's store and convinced others in the area not to sell goods to the plaintiff. 121 La. 658, 663, 46 So. 685, 686 (1908). The court reasoned that because the defendant's store was in competition with the plaintiff, "the animus which led the defendant to take the course it did was…to protect and safeguard its own business interest." *Id*. Likewise, Griffin's efforts to encourage the City to use it as a demolition contractor rather than Kolb were not malicious or wanton towards 1031 Canal, but instead, were done in furtherance of its commercial interests.

Moreover, 1031 admits that Griffin was motivated by "an opportunity to make a tremendous amount of money." R. Doc. 64 ¶ 57. Although Griffin's alleged pursuit of "windfall profits" may allow 1031 to recover under other counterclaims, in the context of this tort, "an intent to maximize profits or garner more business is not 'malice.'" *Metcalfe & Sons Invs., Inc. v. Multiquip, Inc.*, No. 3:09-0941, 2011 WL 4527432, at *3 (M.D. La. Sept. 27, 2011); *see also JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4th Cir. 3/6/02), 812 So. 2d 834, 841 (holding that interference in the hope of re-sale at higher profit is the "very type of profit maximization conduct that has been held insufficient to satisfy the malice element.")

Ultimately, 1031 Canal has failed to demonstrate a plausible claim that Griffin maliciously prevented 1031 Canal from dealing with third parties during the alleged period of temporary disruption. Accordingly, 1031's allegations in the Amended Complaint, even if taken as true, are insufficient to show a plausible claim of tortious interference.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendant's tortious interference with business relations claim, R. Doc. 77, is **GRANTED,** and Defendant's tortious interference with business counterclaim is dismissed.

New Orleans, Louisiana, on this 10th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE