UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **D.H. GRIFFIN WRECKING COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1051** |
| **1031 CANAL DEVELOPMENT, LLC** | **SECTION "L" (3)** |

### ORDER & REASONS

Before the Court are motions by Defendant 1031 Canal Development, LLC, ("1031 Canal") to strike, or alternatively, to dismiss or for summary judgment on Plaintiff D.H. Griffin Wrecking Co. ("Griffin")'s defamation claims. R. Docs. 82, 83. Plaintiff opposes the motion, and Defendant replied. R. Docs. 87, 102. Having considered the applicable law and heard oral argument, the Court now rules as follows.

I. **BACKGROUND**

This case arises out of the demolition of a planned Hard Rock Hotel after its partial collapse on October 12, 2019. The Court assumes familiarity with the factual and procedural background of the case. *See generally* R. Doc. 110. After the collapse, 1031 Canal and Griffin entered into a "Binding Memorandum of Understanding of Demolition (Project)" ("MOU") on January 14, 2020 concerning the demolition of the building located at 1031 Canal Street (the "Building") through implosion. R. Doc. 1-1. The MOU provided, in pertinent part, that Griffin would "provide $50 million of liability insurance dedicated to the Project" and that the parties would formalize the agreement within 7 days. *Id.* at 2. After further negotiations, the parties failed to reach an agreement, in part because Griffin was only able to secure a commitment for $22 million in insurance coverage by March 25, 2020. *Id.* ¶¶ 21-23.

1

Relevant to the instant motion, Griffin filed an Amended Complaint alleging three counts of defamation based on the foregoing events. R. Doc. 74. Counts Six and Seven involve allegedly defamatory statements 1031 made as part of this litigation. Specifically, Griffin contends that 1031 Canal defamed them by repeatedly falsely stating that 1) "D.H. Griffin had ulterior motives in determining the two failed tower cranes needed to be imploded prior to the demolition of the Building" and 2) "D.H. Griffin breached the public trust and is hiding information about the demolition of the two failed tower cranes." R. Docs. 74 ¶¶ 144, 152.  Count Eight asserts a claim that 1031 "defamed D. H. Griffin by repeatedly falsely stating that D.H. Griffin was 'unable to procure sufficient insurance for the Building demolition.'" *Id.* 158.

## II. PRESENT MOTIONS

### a. Motion to Strike

Defendant 1031 Canal now seeks to strike Griffin's defamation claims under Louisiana Code of Civil Procedure Article 971, also known as Louisiana's anti-SLAPP statute. R. Doc. 82. Defendant seeks dismissal on the grounds that Counts Six and Seven are premature as a matter of law, and that Count Eight is "fatally deficient" because "the statements are not false and there is no evidence to support any finding of fault." R. Doc. 82-1 at 10. It is is an open question, however, whether art. 971 is available in this Court given the Supreme Court's decision in *Shady Grove*, which dictates that a federal court should not apply a state law or rule if a Federal Rule of Civil Procedure "answers the same question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).[1] After the parties thoroughly briefed the issue, 1031 contended in its

---

[1] The Fifth Circuit has applied article 971 in Louisiana diversity cases in the past; however, it has not revisited the issue since *Shady Grove*. *See Henry v. Lake Charles Am. Press*, 566 F.3d 164, 168-69 (5th Cir. 2009) ("Louisiana law, including the nominally-procedural Article 971, governs this diversity case"). *But see Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) (finding that a Texas anti-SLAPP statute does not apply in federal court because Rule 56 precludes "any other [procedural] device for determining whether a claim supported by sufficient evidence will avoid pretrial dismissal.") In *Klocke*, the Fifth Circuit distinguished the Texas statute from art. 917, explaining "the comparable conflict between the Federal Rules and Louisiana law is less obvious." 936 F.3d at 248-249.

Reply that "the Court need not resolves the issues with *Klocke*; rather the Motion for Summary Judgment is due to be granted." R. Doc. 102 at 2. The Court agrees that it need not determine whether art. 971 is applicable at this time, as Griffin's defamation claims may be properly addressed pursuant to 1031's motion for summary judgment.

### b. Motion to Dismiss, or alternatively, for Summary Judgment

As an alternative to the Motion to Strike, 1031 has filed a motion to dismiss or for summary judgment on Griffin's defamation claims pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure. R. Doc. 83. 1031 seeks dismissal of Counts Six and Seven because they are premature "under a straightforward application Louisiana law" and Count Eight because the allegedly defamatory statements are true statements of fact. R. Doc. 83-1 at 2. 1031 argues that Count Eight must be dismissed because Griffin can not demonstrate falsity or false. *Id.* at 18-19. In March 2020, Griffin revealed that it had only obtained $22 million in insurance.[2] Based on this representation, 1031 then asserted that Griffin was unable to procure the insurance it agreed to obtain. 1031 maintains these statements were true and that "Griffin's counsel's own words can lead to no other conclusion." *Id.* at 20. 1031 further insists it did not learn of the April 9 quotes for $52 million until May 1, 2020, after the allegedly defamatory statements were made. As a result, "Griffin cannot succeed on showing any fault." *Id.* at 21.

Griffin opposes the motion, arguing that genuine issues of fact exist as to (1) whether Griffin ever had an obligation to obtain $50 million in coverage and (2) whether Griffin could obtain $50 million in insurance coverage. R. Doc. 89. First, Griffin argues that issues of fact related

---

[2] In a March 18, 2020 email, Griffin's counsel stated: "To summarize, the news is not good. To date, Griffin has only been able to amass $12 million of coverage, and that coverage comes at a steep price… As of this writing we do not know how close we can get to $50 million in coverage, or the total premium cost of such coverage." *See* R. Doc. 83-1.

3

to the "binding" nature of the MOU preclude summary judgement here.[3] Second, Griffin argues that there is a dispute of fact as to "whether 1021 knew or should have known the falsity of its statement that Griffin could not obtain $50 million" because "1031 knew D.H. Griffin actually received an insurance coverage commitment for $50 million in February 2020." *Id.* at 18. Griffin dismisses the evidence offered by 1031 as only showing that "at a particular point in time D.H. Griffin had not yet obtained $50 million in insurance coverage commitments," not that Griffin **could not** obtain the $50 million. *Id.* at 10.

In reply, 1031 contends that Griffin has failed to show a genuine issue of material fact with respect to Count Eight. R. Doc. 102 at 3. 1031 also objects to Griffin's attempt "to expand its defamation claim in Count Eight to encompass the issue of whether it definitively agreed to procure $50 million." *Id.* at 4. 1031 argues there "simply cannot be any defamation associated" with an assertion that Griffin committed to procuring $50 million in insurance because the assertion is true and "nothing about such a statement could possibly tend to harm Griffin's reputation or deter others from dealing with it." *Id.* at 4.

### III.   LAW & ANALYSIS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the

---

[3] Griffin characterizes the MOU as "a framework for future discussion, not a binding contract, with subsequent good faith negotiations leading to contract documents for the implosion of the Building." *Id*. at 13.

evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

To establish a claim for defamation under Louisiana law, a plaintiff must show: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy,* 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139. "[E]ven when a plaintiff makes a *prima facie* showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."; *Id.* (citing *Doe v. Grant*, 01–0175, p. 9 (La. App. 4th Cir. 1/29/03), 839 So.2d 408, 416, *writ denied*, 03–0604 (La. 5/2/03), 842 So.2d 1102)); *see also Wyatt v. Elcom of Louisiana,*

5

*Inc.*, 34,786 (La. App. 2d Cir. 6/22/01), 792 So.2d 832, 835 ("Truth is an absolute defense to the action for defamation.").

Here, Counts Six and Seven of the Amended Complaint deal with statements made in the course of this lawsuit. R. Doc. 74 ¶¶ 144, 152. Courts in this state have consistently held "that an action for defamation arising out of allegations made in [a] judicial proceeding, and made against a party to those proceedings, cannot be brought until those proceedings are terminated." *Directv, Inc. v. Atwood*, No. 03-1457, 2003 WL 22765354, at *1 (E.D. La. Nov. 19, 2003) (citing *Ortiz v. Barriffe,* 523 So.2d 896, 898 (La. App. 4th Cir.)). Accordingly, the Court finds that Counts Six and Seven must be stayed pending resolution of other claims in the case.[4]

The Court now turns to Count Eight. The remaining defamation claim involves statements that D.H. Griffin was "unable to procure sufficient insurance for the Building demolition." R. Doc. 74 ¶ 158. In particular, Griffin alleges that 1031 made false and defamatory statements on the following five occasions: (1) an assertion in a March 25, 2020 email from Mr. Dwyer that "Griffin is unable to meet his prior commitments for insurance and is only abl[e] to produce $22,000,000 (less than half of the required amount) at an additional cost of $3,400,000 (an amount that [National] has refused to pay)"; (2) an assertion in a March 30, 2020 Motion for Approval of Site Demolition, Entry of Evidence Preservation Protocol, and for Expedited Hearing that "Ultimately, after the contractor proposing to implode the building was unable to provide sufficient insurance to account for the risks to surrounding neighbors, 1031 Development contracted with Kolb Grading, LLC"; (3) testimony from Mr. Dwyer during an April 2, 2020 Administrative Hearing (which is quoted and discussed further below); (4) an assertion in an April 20, 2020 Emergency

---

[4] In reply, 1031 Canal states that it does not oppose an order staying litigation of Counts Six and Seven pending resolution of the other claims in this case "to avoid needless conflict and unnecessary procedural questions as to the premature claims." R. Doc. 102 at 2.

Motion that "Griffin confirmed to 1031, the City, and the State that it could not fulfill its obligation to obtain $50 million in insurance for its planned implosion"; and (5) an assertion in an April 21, 2020 letter that "1031 negotiated in good faith with the City's chosen contractor (D.H. Griffin)—and made numerous concessions during those negotiations—only for D.H. Griffin to reveal at the end of March that it could not fulfill its obligation to obtain the $50 million of liability coverage everyone agreed was needed for an implosion." *See id.*

Count Eight must be dismissed both because the asserted statements are substantially true and because there is no evidence to support a finding of fault. A close review of the record indicates that 1031 Canal's assertions that Griffin could not produce $50 million in insurance coverage are, put simply, true. Griffin contends that a dispute of fact exists because Griffin secured $50 million in February 2020. By March 10, 2020, however, that insurance tower had collapsed.[5] R. Docs. 89 at 15; 89-1, Exhibit A ¶¶ 16-19. Griffin then began working to reassemble the required coverage. On March 18, 2020 Griffin provided an update stating, "[t]he news is not good" with respect to insurance coverage and that, "to date, Griffin has only been able to amass $12 million of coverage, and that coverage comes at a steep price" and [a]s of this writing we do not know how close we can get to $50 million in coverage."  R. Doc. 83-2. On March 20, 2020, Griffin informed 1031 they had obtained "firm quotes for $22 million in coverage" at a premium of $5,378,929.253. R. Doc. 83-5. Finally, on March 25, 2020, a representative from Griffin called a representative of 1031 "to see whether there was any way 1031 could get comfortable with the idea of proceeding with the explosive demolition with less than $50 Million in coverage if D.H. Griffin was unable to secure those limits of coverage." R. Docs. 89 at 16; 89-1 Exhibit A ¶ 24.

---

[5] The special treatment—that is full immunity and indemnity—afforded CDI, Griffin's blasting subcontractor, by the State of Louisiana "resulted in the collapse of the Insurance Tower, as certain insurers no longer were willing to take on the risk." R. Doc. 89 at 15.

7

Notably, the allegedly defamatory statements were all made *after* the February insurance tower collapsed and Griffin provided the status updates detailed above. Further, the facts show that as late as April 7, 2020, 1031 still did not have $50 million in coverage. R. Doc. 74 ¶¶ 102, 106. It was not until April 9, 2020 that Griffin obtained a quote for required insurance, and even then, it was at an increased cost of $6,837,304.07. *Id.* ¶ 106. In sum, these assertions occurred while Griffin was working to reassemble an insurance tower totaling $50 million but had not yet done so. Although Griffin did not explicitly state could *never* obtain $50 million, it repeatedly represented it was unable to do so from March 10, 2020 to March 25, 2020. Therefore, 1031's March 25, 2020, March 30,2020, and April 2, 2020 statements were true, an absolute defense to defamation under Louisiana. *See* La. Rev. Stat. § 13:3602; *Wyatt v. Elcom of Louisiana, Inc*., 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832, 835 (internal citation omitted).

As for the April 20, 2020 and April 21, 2020 statements, 1031 maintains that it had no way of knowing of Griffin's "late-coming quotes" because Griffin only informed the City, not 1031, of its quote for $52 million.[6] Griffin offers no evidence in dispute of this, and instead, argues that 1031's awareness is "irrelevant." R. Doc. 89 at 16. The Court disagrees. Whether 1031 knew or should have known that Griffin later secured greater coverage is certainly relevant to whether 1031 can be held at fault for making these assertions. *See Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 143 (defining fault for the purposes of defamation as "a lack of reasonable belief in the truth of the statement giving rise to the defamation"); *see also Hoffman v. Bailey*, 257 F. Supp. 3d 801, 829 (E.D. La. 2017) ("The third element of a defamation action is fault (negligence or greater) on the part of the published"). Griffin had informed 1031 on several

---

[6] By this point, the relationship between the two parties had deteriorated. By March 25, 2020, 1031 clearly represented that it was no longer interested in using Griffin as a contractor. Griffin responded in turn on March 29, 2020 by stating it would "all bets are off" and it would "not agree to any contractual arrangement under which it is required to contract with 1031 Canal." R. Doc. 83-12 at 5.

8

occasions that the quotes were below the requested $50 million in coverage. *See* R. Docs. 83-2; 83-5; 89 at 16. The record indicates that 1031 did not know of the April 9 quote for $52 million until May 1, 2020,[7] therefore, these statements cannot form the basis of a valid defamation claim.

Lastly, the Court need not decide at this juncture if Griffin had an obligation to secure the $50 million. Count Eight of the Amended Complaint alleges that 1031 defamed Griffin "by falsely stating that Griffin was unable to procure sufficient insurance for the Building demolition," thereby injuring Griffin's reputation because "third parties now wrongly believe Griffin is unable to acquire sufficient insurance for its projects." *Id.* ¶¶ 158-160. Griffin did not, and cannot, allege any defamation as to the statement that Griffin committed to obtaining $50 million. There is no harm to Griffin's reputation in such a statement when that insurance amount was explicitly mentioned in a "Binding Memorandum of Understanding" signed by the president of Griffin, which at the very least, set out "commercial terms agreed in principle." R. Doc. 89 at 12; 89-2 ¶ 9. Moreover, D.H. Griffin concedes that it told the 1031 representative Griffin "could do the work for the price stated in the MOU and would try to buy $50 million of insurance." R. Doc. 89 at 13; 89-2 ¶ 11. The exact nature, *ie.* binding or non-binding, of the provision involving $50 million in insurance does not create an issue of fact as to Griffin's claim that 1031 defamed Griffin by stating it failed to obtain sufficient insurance for the demolition.

Accordingly, Count Eight must be dismissed for lack of falsity and fault.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Defamation Claims is **GRANTED in part DENIED in part**. R. Doc. 83. The Motion is granted

---

[7] Counsel for Griffin confirmed $52 million of insurance in an email to Counsel for the City of Orleans. R. Doc. 83-12 at 6.

with respect Claim Eight of the Amended Complaint and denied with respect to Claims Six and Seven of the Amended Complaint. No costs shall be imposed.

**IT IS FURTHER ORDERED** that Claims Six and Seven of the Amended Complaint are to be **DEFERRED** pending resolution of the other claims in this case.

Accordingly**, IT IS ALSO ORDERED** that the special motion to strike, R. Doc. 82, is **MOOT**.

New Orleans, Louisiana, on this 19th day of March, 2021.

*Eldon E. Fallon*